## Case No. 6,026.

### In re HANNA.

[4 Ben. 469;[1] 4 N. B. R. 411 (Quarto, 139); 5 N. B. R. 292.]

District Court, S. D. New York.   Jan., 1871.

MORTGAGE—SPECIAL CUSTODIAN.

Where, in a bankruptcy proceeding, an injunction was issued staying the proceedings in a foreclosure suit brought to foreclose a mortgage given by the bankrupt on certain real estate, and the mortgagees applied to the court, on petition, to set aside the stay, in order that the property might be sold under the decree in the foreclosure suit: *Held,* that the register in charge would be appointed special custodian of the property, to sell the same, and receive the proceeds subject to the order of the court, the deed to be given by the register to convey the title free from the lien of the mortgage.

[Cited in Davis v. Anderson, Case No. 3,623.]

In this case, which was a proceeding in involuntary bankruptcy, an injunction had been issued staying the proceedings in a foreclosure suit brought by the firm of A. T. Stewart & Co., to foreclose a mortgage upon real estate given by the bankrupt [Samuel Hanna]. A decree had been made in the foreclosure suit, and the property was advertised for sale when the injunction was issued. The mortgagees applied to the court, on petition, setting up that the mortgage was given bona fide, and that they proposed to maintain the validity thereof as against any assignee, alleging, also, that the property would be deteriorated greatly in value, unless the property was speedily sold, and praying that the injunction might be set aside, so as to allow them to proceed with the sale.

F. N. Bangs, for A. T. Stewart & Co.
M. A. Kursheedt, for petitioning creditors.

BLATCHFORD, District Judge. An order will be entered appointing the register in charge of this case to be special custodian of the property advertised for sale under the mortgage to A. T. Stewart & Co., and directing him to sell the same under general orders 19 and 21, and rule 11 of this court, with such other advertisement of sale as shall seem to him proper, and to receive the proceeds of such sale and pay them into this court, they then to be deposited in the United States Trust Company, on interest, to the credit of these proceedings, as a separate fund, subject to the further order of this court. The deed to be given by the register to the purchaser will convey a title under the order of this court, free from the lien of the mortgage of September 30th, 1869, in pursuance of the provisions of section 20 of the act [of 1867 (14 Stat. 526)], and the sale will be made free from such lien. The order will recite the application by A. T. Stewart & Co., and will direct that the lien of the mortgage be transferred from the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

property to be sold to its said proceeds. If it shall be thought desirable, in order to obtain a better price for the property, the injunction may be so far modified that the sale may take place also under the judgment, and the referee may unite in the deed. An order will be settled, on notice, to carry out these provisions.

[In case No. 6,027, A. T. Stewart & Co. claimed to have their estimate of indebtedness under the value of real estate covered by their mortgage included in the amount on which they were entitled to vote for assignee. The claim was not allowed.]

---

## Case No. 6,027.

### In re HANNA.

[5 Ben. 5;[1] 7 N. B. R. 502.]

District Court, S. D. New York.   Feb., 1871.

AMOUNT OF DEBT—VALUE OF SECURITY.

At the meeting of creditors to choose an assignee, a creditor, who held as security for a debt a mortgage, which in his proof of debt he stated, on information and belief, to be worth less than the amount of the debt, claimed to be entitled to vote for assignee, on the difference between the value, so stated, and the amount of the debt. *Held,* that he was not entitled to vote upon such difference, or any part thereof.

[Cited in Re Hunt, Case No. 6,884.]

[In the matter of Samuel Hanna, an involuntary bankrupt.]

At the meeting of creditors called for the purpose of choosing an assignee herein, the firm of A. T. Stewart & Co. had filed a proof of debt, and claimed the right to participate in the choice of assignee, and to have the sum of $50,075.82, being the difference between an item (viz., $100,075.82), of indebtedness, and the value of the securities held therefor, as such value was estimated and sworn to in said deposition, included in the amount on which they were entitled to vote. Edward S. Innes, a creditor who had proved his debt, objected, among other things, that said deposition and the matters therein stated did not entitle the said A. T. Stewart & Co. to participate in the choice of assignee, upon said sum of $100,075.82, until the value of the property held as security should have been ascertained by sale thereof, in such manner as the court should direct. Thereupon, at the request of the counsel for the respective parties, the question was adjourned into court, for decision by the judge, with the following opinion by the register:

By JAMES F. DWIGHT. Register:

The claim of A. T. Stewart & Co., consists of two parts: 1st. For $25,000 and interest, on five several notes and drafts, which amount is unsecured. 2d. For $160,513.80, secured by two mortgages, each for $150,000, and upon which indebtedness has been paid the sum of $61,591.57, leaving still unpaid (but secured by the mortgages), the sum of $98,922.23. This creditor claims to fix the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

value of the securities by the deposition of the partner making the proof of debt, that he "has been informed and believed," that the security of the two mortgages is not worth beyond the sum of $50,000; and that, although the value of these securities may prove to be more or less hereafter, the "estimate" made in this way is sufficient for the purposes of adjusting the amount on which the firm may be admitted to vote for assignee.

I do not consider this position tenable. The twentieth section of the act [of 1867 (14 Stat. 526)] seems to me to clearly determine this point, in saying: "When a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon, for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt, after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court shall direct." The mortgages themselves were to the extent of $300,000, to cover loans and advances; and, as these loans and advances had not equaled the amount stated as that security, I am of opinion that A. T. Stewart & Co. can be 'admitted as a creditor," under this proof of debt, only in the amount of $25,000 and interest, for the notes and drafts of the first class stated; and that the indebtedness stated of the second class must rest in abeyance until the value of the securities stated are ascertained in the manner provided for in the section quoted.

Mr. Hilton, for A. T. Stewart & Co.
Mr. Kursheedt, for Edward S. Innes.

BLATCHFORD, District Judge. I concur with the register in his views.

[In Case 6,026 a special order was made appointing the register special custodian of the property put up for sale under the mortgages to A. T. Stewart & Co.]

HANNA (ROCKHILL v.). See Cases Nos. 11,979 and 11,980.

## Case No. 6,028.

### The HANNAH.

[Cited in The Harmony, Case No. 6,081. Nowhere reported; opinion not now accessible.]

## Case No. 6,029.

### HANNAH et al. v. The CARRINGTON.

[2 West. Law Month. (1860) 456.]

District Court, N. D. New York.

MARITIME LIEN—PERFORMANCE OF CHARTER-PARTY.

1. Under the general maritime law, the vessel is ordinarily bound to the cargo, and the cargo to the vessel, for the performance of the usual stipulations of the contract of affreightment; but that law gives no lien on a vessel as a security for the performance of a charter party, or a contract for the transportation of a cargo, until some lawful contract of affreightment is made, and property shipped in pursuance thereof.
[Cited in The Pauline, Case No. 10,848; The R. G. Winslow, Id. 11,736; Scott v. The Ira Chaffee, 2 Fed. 407.]

2. The cases of The Aberfoyle [Case No. 17] and The Pacific [Id. 10,643] commented upon and considered as overruled by the case of Vandewater v. Mills, 19 How. [60 U. S.] 82.

The libel in this case was filed [by Perry Hannah and others against the schooner Carrington, her tackle, apparel, and furniture, and against John Lane, claimant] for the recovery of damages alleged to have been sustained by the violation of a charter-party, or memorandum of charter, made between the libellants and certain part-owners and agents of the Carrington. By the terms of the charter, the vessel was to carry the libellants' freight, of the kind designated, at specified rates, during the season of navigation. It is alleged by the libel, that the part-owners and agents of the Carrington—finding that she could earn more freight and make greater profits by sending her to Buffalo—about the first day of October, and during the period for which she was so chartered, without the libellants' leave, and in direct violation of the charter-party, withdrew her from the trade for which she had been so chartered, and refused any longer to employ her under such charter. It also alleges that freights were then high, and that the libellants were compelled, in consequence of such refusal, to employ other vessels, at higher rates of freight: and that they were, besides, prevented from bringing to Chicago a large quantity of lumber which they then had at Grand-Traverse-Bay; by which they had sustained damages to the amount of $1,800. The claimant, by his answer, insisted, among other things, that the libellants had no lien upon the vessel, even upon the case made by the libel; and by arrangement between the parties, this question was argued without the production of evidence upon the issues of fact made by the answer.

HALL, District Judge. It can hardly be necessary to say, that this suit, being a proceeding in rem, can not be maintained, unless the libellants have a maritime lien, or some other lien or privilege against, or upon, the vessel. As general creditors, however meritorious, they can not proceed against the Carrington in this form of action; and as they have not alleged in their libel, or suggested upon the argument, that they have any lien other than the lien or privilege given by the general maritime law, it is only necessary to consider whether, under that law, they have any privilege against the vessel. Upon this point, the libellants' counsel relied upon the following cases: The Volunteer [Case No. 16,991]; Drinkwater v. The Spartan [Id. 4,085]; The Rebecca [Id. 11,619]; Clark v. Crabtree [Id.